## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SALEM STONES, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>　　　　　Defendants. | No. 26-03203 |

### COMPLAINT

1.      Plaintiff, Salem Stones, Inc., is an importer of merchandise into the U.S., from among other countries, China and India.

2.      Beginning in February of 2025, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports.  Plaintiff is responsible for paying these tariffs on its imported goods.

3.      Consistent with the Executive Orders, corresponding amendments to the Harmonized Tariff Schedule of the United States ("HTSUS"), and guidance from U.S. Customs and Border Protection ("CBP"), Plaintiff has deposited IEEPA duties with CBP in relation to entries of merchandise for which it is the importer of record.

4.      On February 20, 2026, the U.S. Supreme Court struck down these IEEPA duties, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v.*

-1-

*Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

5.     Plaintiff seeks an order from this Court granting the relief necessary to ensure that Plaintiff secures a refund of all IEEPA duties finally determined to have been imposed and collected unlawfully as well as pre-judgment and post-judgment interest as provided by law.

6.     That relief includes:

   a.   A declaration that the IEEPA duties were unlawfully imposed and collected;

   b.   An injunction preventing CBP from further collection of the IEEPA duties; and

   c.   An order requiring CBP to refund all IEEPA duties Plaintiff has deposited with interest as provided by law.

**JURISDICTION**

7.     This court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i).  See *Learning Resources*, slip. op. at 5, n.1.

8.     The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court.  28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

9.     Plaintiff has standing to bring this lawsuit because it is an importer of record for goods imported into the United States from countries subject to the unlawful IEEPA duties as implemented and collected by CBP. As a result of the executive orders challenged by this lawsuit, Plaintiff has paid IEEPA duties to the United States and thus have suffered injury caused by those orders. Declaratory and injunctive relief from this Court would redress those

10. The Supreme Court confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the Court of International Trade. *Learning Resources*, slip. op. at 5. Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA duties paid by importers.

11. Moreover, this Court, in *Atmus Filtration, Inc., v. United States*, Case 1:26-cv-01259-RKE, reaffirmed its jurisdiction to hear these issues and issued an Order on March 4, 2026, directing the U.S. Customs and Border Protection to liquidate unliquidated entries subject to the IEEPA duties without regard to those duties and to reliquidate any liquidated entries for which liquidation is not final.

12. Accordingly, for the reasons set out in *Learning Resources*, as well as this Court's Order of March 4, 2026, in Case 1:26-cv-01259-RKE, Plaintiff seeks for itself a full refund from Defendants of all IEEPA duties Plaintiff has paid to the United States.

13. Given the landscape of the IEEPA Tariffs, this separate action is necessary because, although the IEEPA duties and underlying executive orders were held unlawful, it remains unclear whether importers, including Plaintiff, that have paid IEEPA duties, are guaranteed a refund for those unlawfully collected tariffs in the absence of their own judgment and judicial relief.

**PARTIES**

14. Plaintiff, Salem Stones, Inc., is a private U.S. Company located in Obetz, Ohio and duly incorporated in the State of Ohio.

15. Defendant United State Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

16. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

17. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

18. Defendants are referred to collectively in this complaint as "CBP."

## FACTS

### I. Imposing Tariffs is a Core Power the Constitution Assigns to Congress

19. The United States Constitution, Art. I, § 8, cl. 1 provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises…" and "[t]o regulate Commerce with foreign Nations." *Id.* at cl. 3.

20. Any Congressional delegation of taxing authority to the President must include an "intelligible principle" to guide and limit the President's exercise of that legislative function. *FCC v. Consumers' Rsch.*, 606 U.S. 656, 673 (2025)("To distinguish between the permissible and the impermissible in this sphere, we have long asked whether Congress has set out an 'intelligible principle' to guide what it has given the agency to do.").

21. When Congress delegates powers to address issues of deep political or economic consequence, it must do so through a clear statement to that effect. *Biden v. Nebraska*, 600 U.S. 477, 506, (2023).

22. IEEPA contains no reference to tariffs, duties, or taxes, among the list of powers delegated to the President to address international economic emergencies.

23. Absent a clear statement of delegation in IEEPA and the lack of any intelligible principle guiding the exercise of tariff authority, IEEPA does not authorize the challenged Executive Orders and the resulting collection of IEEPA tariffs. *Learning Resources*, slip op. at 20.

### II. President Trump orders a series of tariffs, invoking IEEPA for his authority.

### A. The IEEPA duties

24. On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs.

25. The executive order directed at Mexico, Executive Order 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9, 117 (Feb. 7, 2025), imposed an additional 25% tariff on the import of goods from Mexico, with certain exceptions.

26. The executive order directed at Canada, Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9, 113 (Feb. 7, 2025), also imposed a 25% tariff, with certain exceptions.

27. Finally, the executive order directed at China, Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9, 121 (Feb. 1, 2025), imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

28. Four days later, on February 5, 2025, the President issued another order, Executive Order 14, 200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9, 277 (Feb. 11, 2025).

29. The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11, 463 (Mar. 7, 2025) ("March 3 Amendment"). The March 3 Amendment raised the incremental tariffs on imports from China to 20%.

30. On April 2, 2025, citing trade deficits with our trading partners as its own national emergency, President Trump issued Executive Order 14257, *Regulating Imports with a Reciprocal*

*Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 7, 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

31.    On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec. Order No. 14259*, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025).

32.    The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625 (Apr. 15, 2025). Meanwhile, the 20% trafficking tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

33.    On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, *et al. v. Trump*, *et al.*, No. 25-cv-00066 (Dkt.2). This Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed. It was the Federal Circuit's decision that was, in turn, affirmed by the Supreme Court on February 20, 2026.

34.    In the months following the *V.O.S. Selections* complaint, the President, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying others.

35.    CBP continued to collect duties imposed by the Challenged Tariff Orders while the *V.O.S. Selections* litigation and related litigation remained pending, and only just announced on February 22, 2026, that duties imposed under the Challenged Tariff Orders "will no longer be collected

for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026).[1]

36.    By this Complaint, Plaintiff seeks relief as a result of all duties it has paid or will pay to the United States arising from the IEEPA executive orders ("Challenged Tariff Orders").

### B.    CBP's implementation of the unlawful tariffs

37.    CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

38.    In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

39.    CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

40.    The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify

---

[1] Available at https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_WIDGET_2.

the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

41.    When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

### C.    Liquidation

42.    "Liquidation means the final computation or ascertainment of duties on entries for consumption for drawback entries." 19 C.F.R. § 159.1.

43.    Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the *entry* based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

44.    CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

45.    Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

46.    Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, liquidation is done automatically by operation of law. CBP tries to liquidate duties 314 days after the date of entry of the goods and will usually post a notice on its website.

47.    CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

48.     Once liquidation has occurred, and *if* the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties. See 19 U.S.C. § 1514.[2] But not all liquidations are protestable: where CBP acts in a ministerial capacity (i.e., without discretion) in imposing a duty, the entry's liquidation cannot be protested.  *Id.*; *see also Rimco Inv. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

49.     In *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) ("*AGS*"), a three-judge panel of this Court confirmed the authority of this Court to reliquidate entries subject to the IEEPA duties. *Id.*  There, this Court decided that a § 1581(a) protest of a liquidation of an entry subject to IEEPA duties would be futile because CBP's collection of such duties is purely ministerial.  *Id.* at 7 ("In such a case, a § 1581(a) protest would be futile because 'all that Customs is authorized to do is collect the' duty") (citation omitted).

50.     In a related action, the government has represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

**D.     The Supreme Court has held that IEEPA duties are not authorized.**

51.     On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoyed the government from enforcing the IEEPA duties at issue in that case.  That decision was appealed to the Court of Appeals for the Federal Circuit.

52.     The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

---

[2] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

53.    Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept 9, 2025).

54.    In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).  That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*.  The cases were consolidated, with argument on November 5, 2025.

55.    On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs."  *Learning Resources*, slip op. at 20.[3]

56.    As of the date of this complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders.

57.    The goods Plaintiff imports into the United States that are subject to IEEPA tariffs entered the United States under new HTSUS codes from foreign counties.

58.    Plaintiff has paid IEEPA duties on numerous entries.

**COUNT I – THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES***

59.    Plaintiff incorporates paragraphs 1-58 as if fully rewritten herein.

60.    In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this court's ruling and the Federal Circuit's affirmance

---

[3] This complaint cites to the "*Learning Resources*" slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the Federal Circuit's decision in *V.O.S. Selections* was affirmed.

of this court's opinion in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

61.     The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task … is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Resources*, slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's decision, which for its part had affirmed this Court's ruling on the merits of the IEEPA tariffs. *Id*. at 21.

62.     The Challenged Tariff Orders purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA.

63.     In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

64.     As a direct and proximate result of the actions taken in violation of the laws cited herein, Plaintiff has suffered financial loss. This Court is bound by the *Learning Resources* decision and as a result of that decision should order refunds of all IEEPA duties paid by Plaintiff, with interest as provided by law.

### COUNT II – THE EXECUTIVE ORDERS AND IEEPA TARIFFS ARE UNCONSTITUTIONAL

65.     Plaintiff incorporates paragraphs 1-64 as if fully rewritten herein.

66.     The authority to lay and collect taxes, duties, imposts and excises and the power to regulate foreign commerce rests with Congress.  Art I. § 8 cls. 1 and 3.

67.    The imposition of the challenged IEEPA tariffs is an unheralded exercise of power with vast economic and political significance.

68.    In the absence of clear congressional authorization, the exercise of tariff authority under IEEPA is an unconstitutional assumption of legislative power in presidential action.

## COUNT III – DECLARATORY RELIEF

69.    Plaintiff incorporates paragraph 1-68 as if fully rewritten herein.

70.    Plaintiff is the importer of record of merchandise imported into the United States and has deposited with the CBP IEEPA duties resulting from the challenged Executive Orders and IEEPA tariffs.

71.    Plaintiff has, therefore, been injured by the imposition and collection of unconstitutional and invalid IEEPA duties.

72.    The challenge to the validity of the IEEPA duties is an actual controversy before this Court.

73.    This Court has authority under 28 U.S.C. § 2201(a) to declare Plaintiff's rights and legal relations with respect to the challenged IEEPA duties.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a) Find that IEEPA does not authorize the President to impose the challenged IEEPA tariffs;

b) Find that the challenged IEEPA tariffs are *ultra vires* and, therefore, void *ab initio*;

c) Enjoin CBP from further collection of the challenged IEEPA duties with respect to Plaintiff's importations;

d) order CBP to reliquidate any entries that have been liquidated with IEEPA duties;

e) order CBP to liquidate all unliquidated entries subject to IEEPA duties without IEEPA duties;

f) order the United States to refund to Plaintiff the duties collected from Plaintiff on all entries subject to IEEPA duties, with interest as provided by law;

g) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

h) grant such further relief as this court deems proper.

Dated: July 6, 2026

Respectfully submitted

**LUPER NEIDENTHAL & LOGAN**
*A Legal Professional Association*

*/s/ Kyle T. Anderson*
Kyle T. Anderson
1160 Dublin Road, Suite 400
Columbus, Ohio 43215
Telephone:    614/221-7663
Facsimile:    866/345-4948
kanderson@lnlattorneys.com
*Counsel for Plaintiff Salem Stones, Inc.*

-13-